**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Michael Gregory, Individually and on Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | CLASS ACTION |
| v. | |
| PRONAI THERAPEUTICS INC., NICK GLOVER, and SUKHI JAGPAL, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Michael Gregory ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by ProNAi Therapeutics Inc. ("Pronai" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

### NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons who purchased Pronai common stock between July 15, 2015 and June 6, 2016, inclusive (the "Class Period"), seeking

remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are asserted against certain of Pronai's executive officers and directors.

2.      Pronai is a clinical stage oncology company with a focus on pioneering a novel class of therapeutics based on its proprietary DNA interference (DNAi) technology platform.  Until recently, the Company had only one product candidate – PNT2258, which was purportedly designed to target cancers that overexpress B-cell lymphoma such as Hodgkin's lymphomas and non-Hodgkin lymphoma. Following a February 2008 Investigatory New Drug Application ("IND") with the U.S. Food and Drug Administration ("FDA"), Pronai completed two early clinical trials of PNT2258 before becoming a publicly traded Company in July 2015.  The first pre-IPO trial was a Phase 1 safety trial in patients with relapsed or refractory (i.e. resistant to treatment) solid tumors.  The second pre-IPO trial was a Pilot Phase 2 open-label trial in patients with relapsed or refractory non-Hodgkin lymphoma.

3.      In light of reported positive early clinical results from these trials, the Company initiated two Phase 2 clinical trials of PNT2258 for separate testing in two treatment populations. Specifically, Pronai announced in January 2015 that it had initiated a Phase 2 trial of PNT2258 in patients with relapsed or refractory Diffuse Large B-Cell Lymphoma ("DLBCL") – the most prevalent form of non-Hodgkin lymphoma. Then, in October 2015, the Company announced that it had initiated a second Phase 2 trial of PNT2258 in patients with Richter's Transformation, a rare and more aggressive form of non-Hodgkin lymphoma. Both trials were structured as multi-center, single-agent, open-label studies, meaning patients were "unblinded" to the fact that they were receiving PNT2258.

4.      Since July 15, 2015, Pronai and certain of its officers and directors have misrepresented the efficacy and safety of PNT2258, and the drug's purported attendant capacity

for approval by the FDA. For example, these materially false and misleading statements included, among others, that PNT2258:

- "[H]as the potential to change treatment paradigms across a wide range of oncology indications";

- Is at the "forefront of DNAi-based therapies…[and] the only product candidate in clinical testing using this novel approach";

- Is envisioned "to deliver extraordinary therapeutic outcomes that dramatically change patients' lives";

- Uses a unique propriety technology which "may allow [it] to more profoundly impact oncogenic targets that may be difficult to effectively drug with these other approaches, and potentially result in enhanced efficacy, durability and safety outcomes";

- Is a unique propriety technology that "could also potentially amplify and be complementary to other therapeutic modalities"; and

- Is being clinically developed pursuant to a Company strategy "that is designed to efficiently achieve regulatory approval and maximize the commercial opportunity of PNT2258."

5.      The above statements were materially false and misleading because PNT2258 was not, and never would be, an effective treatment for DLBCL.

6.      Defendants' materially false and misleading statements and omissions caused Pronai's stock to trade at artificially inflated prices throughout the Class Period.

7.      As the Company's two Phase 2 trials progressed and patient enrollment was ongoing, four members of the Company's Board of Directors (including the Chairman) and both of the Company's Chief Scientific Officer and Chief Medical Officer inexplicably resigned.

8.      Investors would ultimately learn the truth that PNT2258 was not an effective treatment for DLBCL when, on June 6, 2016, the Company issued a press release announcing interim data for the two Phase 2 trials and revealed that PNT2258 had failed to produce sufficient efficacy results to justify its continued clinical development.

9.      On this news, the price of Pronai common stock declined from a closing share price of $6.38 per share on June 3, 2016 to close at $2.07 per share on June 6, 2016 *a loss of more than 67%*, on extremely heavy trading volume.

10.     Defendants acted with knowledge and/or with reckless disregard for their fact that their Class Period statements were materially false and misleading when made.

11.     Accordingly, Plaintiff seeks to recover monetary damages on behalf of himself and the Class.

## JURISDICTION AND VENUE

12.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.  In connection with the acts, conduct and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the U.S. mails, interstate telephone communications, and the facilities of the NASDAQ (a national securities exchange located in this District).

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act.  Moreover, Pronai stock traded on the NASDAQ, which his located in this district, and the Company disseminated materially false and misleading statements in this district.

## PARTIES

15.     Plaintiff purchased Pronai securities as set forth herein and in his certification filed herewith.

4

16.     Pronai is a corporation organized and existing under the laws of the State of Delaware with its principal executive offices located in Vancouver, British Columbia, Canada. The Company's common stock trades on the NasdaqGS ("NASDAQ") under the symbol, "DNAI."

17.     Defendant Nick Glover ("Glover") has been the Company's President and Chief Executive Officer ("CEO") since September 2014.

18.     Defendants Sukhi Jagpal ("Jagpal") has been the Chief Financial Officer ("CFO") of the Company since February 2015.

19.     Glover and Jagpal are collectively referred to herein as the "Individual Defendants."

20.     Pronai and the Individual Defendants are collectively referred to herein as "Defendants."

## CONTROL PERSON ALLEGATIONS

21.     By reason of the Individual Defendants' positions with the Company as executive officers, the Individual Defendants possessed the power and authority to control the contents of Pronai's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

**Background**

22.      Pronai is a clinical-stage oncology company purporting to advance novel targeted therapeutics for patients with cancer. Pronai's lead product candidate, PNT2258, is designed to target cancers that overexpress BCL2, an important and validated oncogene known to be dysregulated in many types of cancer. Following a February 2008 IND with the FDA, Pronai conducted two early clinical trials of PNT2258 before becoming a publicly traded Company in July 2015.  The first pre-IPO trial was a Phase 1 safety trial in twenty-two patients with relapsed or refractory solid tumors.  The second pre-IPO trial was a Pilot Phase 2 open-label trial in thirteen patients with relapsed or refractory non-Hodgkin lymphoma.  An open-label trial is a type of clinical trial in which both the researchers and the patients know which treatment is being administered. Thus, each patient in the open label study was "unblinded" to the fact that they were receiving PNT2258, and not a control substance.

23.      On December 5, 2014, Pronai announced interim results of the Pilot Phase 2 trial, including that "a number of patients…achieved meaningful therapeutic outcomes and continue to exhibit durable clinical responses."  In more detail, the Pilot Phase 2 trial results revealed that eleven of the thirteen (11/13) patients treated achieved a clinical benefit, with ongoing Progression Free Survival (PFS) extending to 18 months and beyond.  According to Defendant Glover, the positive results of the Pilot Phase 2 open-label trial demonstrated that PNT2258 would likely perform well in future clinical development:

> ***These results demonstrate that PNT2258 is an obviously active, well-tolerated therapeutic that warrants advanced clinical development***. As such, in the coming months we will be initiating robustly designed studies of PNT2258 as a single agent in patients with refractory or relapsed DLBCL and in Richter's transformed DLBCL, areas of high unmet medical need in which PNT2258 appears to be particularly effective. Given PNT2258's favorable safety profile and the prospect

for a BCL2-targeted agent to augment complementary mechanistic approaches, combination clinical studies with other targeted agents are also being planned.

(Emphasis added.)

24.     In light of these positive results, the Company announced in January 2015 that it had initiated a Phase 2 trial of PNT2258 in patients with relapsed or refractory DLBCL – the most prevalent form of non-Hodgkin lymphoma.  The Phase 2 trial, named "Wolverine," was designed as a multi-center, single-agent, open-label study, again, meaning patients were "unblinded" to the fact that they were receiving PNT2258, and not a control substance.  The primary endpoint of the trial was overall response rate, assessed by FDG-Positron Emission Tomography (PET) scan and compared to relevant historical controls. Secondary outcome measures included disease control rate, progression-free survival, overall survival, and exploratory predictors of outcome assessed by tumor biopsy and pharmacodynamics sample analysis. The study intended to enroll approximately sixty patients, with the first patient dosed on January 7, 2015.

25.     As the Wolverine trial was ongoing, the Company announced the pricing of its IPO of 8.1 million shares on July 15, 2015 at a price of $17.00 per share.  According to the Form S-1 Registration Statement filed by the Company with the SEC on June 12, 2015 ("Registration Statement"), Pronai would use the proceeds raised in the IPO as follows:

- Approximately $43.0 million to fund: (i) the ongoing Wolverine trial; (ii) a second Phase 2 trial of PNT2258 termed "Brighton" that the Company expected to initiate in mid-2015; and (iii) manufacturing activities related to these trials;

- Approximately $40.0 million to fund other planned future Phase 2 trials related to PNT2258 and manufacturing activities related to these trials;

- Approximately $5.0 million to support non-clinical activities and preclinical activities related to PNT2258, including activities related to its mechanism of action; and

- Approximately $7.0 million to further develop our DNAi technology platform and broaden our pipeline of DNAi-based product candidates.

26.     The IPO began on July 16, 2015 and closed on July 21, 2015, with the Company selling 9,135,000 shares for total net proceeds of $143.6 million.  Prior to the closing of the IPO, on July 21, 2015, all outstanding shares of redeemable and convertible preferred stock were converted into 18,361,953 shares of common stock. Accordingly, as of August 20, 2015, there were 30,058,105 shares of common stock outstanding.  On its first day of trading, the Company's trading price skyrocketed to close at $30.80 per share on July 16, 2015.

27.     Following the IPO, the Company announced in October 2015 that it had initiated a second Phase 2 trial of PNT2258 in patients with Richter's Transformation, a rare and more aggressive form of non-Hodgkin lymphoma.  The Phase 2 trial, named "Brighton," was similarly structured as a multi-center, single-agent, open-label study.  The primary endpoint of the trial was overall response rate, and secondary outcome measures included disease control rate, duration of overall response, time to response, progression-free survival, overall survival and safety.  The study intended to enroll approximately fifty patients, with the first patient dosed on October 29, 2015.

28.     Thus, during the Class Period, Pronai was evaluating PNT2258 in two Phase 2 trials: (i) Wolverine, a Phase 2 trial evaluating PNT2258 for the treatment of relapsed or refractory DLBCL; and (ii) Brighton, a Phase 2 trial evaluating PNT2258 for the treatment of Richter's Transformation. Notably, as the Wolverine and Brighton trials progressed, four members of the Company's Board of Directors (including the Chairman) and both of the Company's Chief Scientific Officer and Chief Medical Officer inexplicably resigned between December 9, 2015 and April 26, 2016.

29.     Further, despite previously representing in the Registration Statement that the proceeds raised in the IPO would be used primarily to fund the continued clinical development of

PNT2258, the Company announced on May 26, 2016 that it had acquired an exclusive license

from Carna Biosciences, Inc., for worldwide rights to develop and commercialize AS-141, a small

molecule kinase inhibitor targeting CDC7. This announcement sent the Pronai price per share

upward from $5.95 per share on May 24, 2016 to $6.40 per share on May 26, 2016, an increase of

7.6%. Notably, however, only eight business days later, the Company would announce that

PNT2258 had failed both of its Phase 2 clinical trials and the Company was immediately

terminating all clinical development of the drug.

**The Material Misrepresentations and Omissions**

30.     On July 15, 2015, the beginning of the Class Period, Pronai's previously filed

Registration Statement was deemed effective by the SEC.   Therein, the Company touted the

efficacy and outlook of Pronai's lead drug candidate, PNT2258. In relevant part, the Registration

Statement stated with respect to the potential success of PNT2258:

> Our lead DNAi product candidate, PNT2258, targets BCL2, a widely
> overexpressed oncogene that is an important gatekeeper of the programmed cell
> death process known as apoptosis and has been linked to many forms of cancer. In
> a recent single-agent Phase 2 trial of 13 patients with relapsed or refractory non-
> Hodgkin's lymphoma (NHL), PNT2258 demonstrated evidence of anti-tumor
> activity, with 11 patients achieving a complete response (CR), partial response (PR)
> or stable disease (SD). Furthermore, all four of the diffuse large B-cell lymphoma
> (DLBCL) patients treated in this trial experienced a clinical response, including
> three CRs and one PR, with reported durations on study in the range of nine to more
> than 20 months. Although PNT2258 is in early stages of development and these
> trials were not statistically powered for a formal efficacy analysis, ***we believe the
> preliminary evidence of efficacy observed in this trial, coupled with safety and
> tolerability data collected to date, suggest that PNT2258 has the potential to
> change treatment paradigms across a wide range of oncology indications***.
> Accordingly, we plan to pursue a broad registration-oriented clinical development
> program, initially in hematologic malignancies, that we anticipate will provide the
> foundation of a global registration strategy for PNT2258.
>
> ***
>
> Our vision is to be the leader in developing and commercializing a portfolio of
> DNAi-based therapies to deliver extraordinary therapeutic outcomes that
> dramatically change patients' lives. ***We are at the forefront of DNAi-based***

> *therapies, as we believe that PNT2258 is the only product candidate in clinical testing using this novel approach. In the near term, we plan to broadly develop and commercialize PNT2258 in oncology indications with high unmet medical needs.* The long term, we aspire to commercialize additional DNAi-based therapies with the potential to impact medical paradigms in oncology and other major diseases.

(Emphasis added.)

31.     Further, with respect to the Company's propriety technology, the Registration

Statement stated as follows:

> Our vision is to be the leader in developing and commercializing a portfolio of DNAi-based therapies to *deliver extraordinary therapeutic outcomes that dramatically change patients' lives.* The core of our scientific expertise is our understanding of DNAi oligonucleotides, which are rationally designed DNA sequences that modulate the transcription of oncogenes known to be involved in cancer cell survival and proliferation.
>
> ***
>
> We believe that there is substantial opportunity in the treatment of cancer to target DNA itself by directly interfering with the expression of the oncogenes responsible for cancer. The vast majority of cancer therapy today is targeted downstream at the protein level and, in some cases, at RNA. *Our proprietary DNAi technology platform targets DNA, the upstream genetic material underlying the expression of proteins, and is therefore distinct from therapeutic approaches that target proteins or RNA. This difference may allow our DNAi technology to more profoundly impact oncogenic targets that may be difficult to effectively drug with these other approaches, and potentially result in enhanced efficacy, durability and safety outcomes. In addition, we believe that our unique mechanism for impacting downstream oncogenic proteins could also potentially amplify and be complementary to other therapeutic modalities.*

(Emphasis added.)

32.     And finally, with respect to the Company's development strategy, the Registration

Statement provided that the Company was "pursuing a multi-faceted clinical development strategy

that is *designed to efficiently achieve regulatory approval and maximize the commercial

opportunity of PNT2258,*" and further stated:

> Key elements of our business strategy are to: *Expedite the Clinical Development and Regulatory Approval of PNT2258.* We plan to advance our lead product candidate, PNT2258, initially in DLBCL and Richter's CLL and may pursue

accelerated registration paths and other regulatory designations if data are compelling.

***Pursue a Multi-Faceted Development Strategy for PNT2258 Across Many Oncology Indications.*** In addition to Wolverine and Brighton, we intend to expand the commercial market opportunity for PNT2258 by developing it for the treatment of a wide variety of BCL2-driven tumors, including other hematologic malignancies, such as leukemias and myelomas, as monotherapy and in combination with other therapeutic agents or treatment regimens.

***Maximize the Global Commercial Value of PNT2258.*** We have retained all commercial rights to PNT2258 and future DNAi product candidates. As we further develop PNT2258, we plan to build a commercial infrastructure to directly market in North America and possibly other major geographies that are core to our commercial strategy.

***

33.     These overtly positive representations continued in Form 10-Q's, Form 8-K's, and Company press releases filed or issued throughout the Class Period. Each of these documents were signed and certified as accurate by the Individual Defendants.

34.     For example, on August 21, 2015, Pronai announced its financial and operational results for the second quarter of 2015.  Therein, Defendant Glover touted the ongoing clinical development of PNT2258 as follows:

During the second quarter we continued to advance our clinical programs for PNT2258, opening clinical trial sites and enrolling patients into our Phase 2 Wolverine trial in DLBCL, while preparing for the initiation of our registration-oriented Phase 2 Brighton trial in Richter's Transformed CLL. We plan to initiate three additional Phase 2 trials in 2016 with PNT2258 to ***further investigate the potential breadth of opportunity of our first DNAi-based oncology drug candidate***. We also recently closed our IPO, which raised more than $158 million in gross proceeds to further support the development of PNT2258 and our DNAi platform.

(Emphasis added.)

35.     Similarly, on March 3, 2016, the Company reported financial and operational results for the year ended December 31, 2015, wherein Defendant Glover reiterated the positive ongoing clinical development of PNT2258:

During 2015, *we continued to transform ProNAi into a world-class oncology drug development company*, securing both the talent and capital required to pursue our vision of developing and commercializing a pipeline of promising clinical-stage oncology assets *with the potential to provide meaningful therapeutic outcomes to patients with cancer*. *Concurrent with building our company, we continued to advance our lead asset PNT2258*, operationalizing two Phase 2 trials in 2015, Wolverine and Brighton, that are at the forefront of a concerted registration-oriented clinical development program planned for the drug. In addition to PNT2258, during 2015 we began evaluating novel product candidates available for licensing or acquisition, with the goal of maximizing our clinical development capabilities and leveraging the full potential of our team by advancing a broad and diversified pipeline of assets.

We anticipate reporting initial interim data from the Wolverine trial in third-line DLBCL in the second quarter of 2016. This trial has been designed to identify and characterize patient populations who respond to PNT2258 on the basis of their genetics and disease characteristics and will be essential to determining potential paths to registration for the drug. We recently started enrolling the Brighton trial in Richter's transformation and expect to report interim data from this trial before the end of 2016. *We are also designing a number of additional Phase 2 trials that could support the registration and commercialization strategies for PNT2258*. Two planned trials, Cypress and Granite, will evaluate PNT2258 in combination with standard-of-care treatment regimens for the treatment of second-line DLBCL in the "transplant eligible" and "transplant ineligible" patient populations respectively. We are also designing trials evaluating PNT2258's potential in DLBCL in combination with a targeted anti-cancer drug, and in other hematological malignancies as well. *Although we maintain a strong balance sheet, we are carefully considering the timing of these additional trials with a view to maximizing PNT2258's potential while deploying our capital prudently*.

(Emphasis added.)

36.     At all relevant times, these statements were false and misleading because Defendants were well aware that the Wolverine and Brighton Phase 2 trials of PNT2258 would fail to prove the efficacy and safety of PNT2258 by meeting its primary or secondary endpoints. Specifically, because the Phase 2 trials were structured as open-label studies, Pronai management was aware that the Wolverine study was underperforming and that patients were discontinuing participation in the Brighton study in alarming rates. Despite this, Pronai management continued

to mislead investors regarding the status of the Phase 2 trials, the efficacy and safety of PNT2258, and PNT2258's attendant likelihood for approval by the FDA.

**The Truth Emerges**

37.     On June 6, 2016, the Company issued a press release announcing interim data for the Wolverine trial and revealed that PNT2258 had failed to produce sufficient efficacy results to justify its continued clinical development.  The Company further announced that, to date, five patients had been enrolled in the Brighton study, of which four had already discontinued treatment. Finally, the Company announced that, given the adverse results of both the Wolverine and Brighton trials, it would be suspending all clinical development of PNT2258. The press release stated in pertinent part:

> VANCOUVER, June 6, 2016 /CNW/ - ProNAi Therapeutics, Inc. (NASDAQ: DNAI), a drug development company advancing targeted therapeutics for patients with cancer, today announced interim results from the Wolverine Phase 2 trial of PNT2258 for the treatment of relapsed or refractory (r/r) diffuse large B-cell lymphoma (DLBCL). ProNAi will host an Analyst and Investor Event today from 7:00-8:00am CT at the Hyatt Regency McCormick Place in Chicago where management will discuss these results and provide an update on the PNT2258 development program.
>
> "*Although we observed modest efficacy from PNT2258 in this interim analysis of Wolverine, we do not view these results as robust enough to justify continued development of the drug in DLBCL. We have decided to suspend development of PNT2258 pending further review of these data in order to determine next steps for both this asset and the DNAi platform*," said Dr. Nick Glover, President and CEO of ProNAi. "We continue to maintain a strong balance sheet and will focus our resources and activities on advancing our newly licensed Cdc7 inhibitor, PNT141, as well as on securing additional assets to build a broad and diverse pipeline of oncology drugs under our development."
>
> Wolverine is a multicenter Phase 2 study designed to evaluate the safety and efficacy of PNT2258 monotherapy in 61 response evaluable r/r DLBCL subjects and to explore the correlation between various baseline patient characteristics, including biomarkers, and response rate.
>
> Interim safety and efficacy data as of April 25, 2016 are reported for the first 37 subjects enrolled. *PNT2258 showed single-agent activity in r/r DLBCL subjects*

*with a response rate of 8.1% overall (n = 37) and 15.8% in the response evaluable subgroup (n = 19)*, defined as subjects meeting the amended eligibility criteria of a performance status (PS) of 0-1, exposure to 1-3 prior systemic regimens and having received at least eight doses of PNT2258 within 35 days of starting therapy. *No responses were observed in the 10 subjects with a PS of 2 and/or > 4 prior lines of therapy enrolled prior to the amendment, nor to date in the eight additional subjects enrolled subsequent to the data cutoff date for this interim analysis*.

*PNT2258 is also being evaluated in patients with Richter's Transformation in the Brighton study, a multi-center, single-arm Phase 2 trial. To date, five subjects have been enrolled in this study, of which four have discontinued. The other subject has completed two cycles of treatment. No responses have been observed to date.*

"We designed and conducted a robust, well-executed set of experiments, both clinical and preclinical, in order to further our understanding of the PNT2258 asset and the underlying DNAi technology. Unfortunately, *advanced DLBCL and Richter's Transformation are challenging diseases to treat, and PNT2258 did not markedly improve outcomes in these indications*," said Dr. Barbara Klencke, Chief Development Officer of ProNAi. "*On the basis of these interim assessments, we have decided to close the Wolverine and Brighton studies to further enrollment of new subjects*. On behalf of ProNAi, we would like to thank the patients and their families, investigators and staff involved in these studies for their participation and support."

(Emphasis added.)

38.    In response to the adverse results of both Phase 2 clinical trials of PNT2258, the price of Pronai common stock declined from a closing share price of $6.38 per share on June 3, 2016 to close at $2.07 per share on June 6, 2016 *a loss of more than 67%*, on extremely heavy trading volume.  Indeed, trading in the Company's common stock was temporarily halted on the NASDAQ in response to the news.

## ADDITIONAL SCIENTER ALLEGATIONS

39.    As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to

14

the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Pronai, their control over, and/or receipt and/or modification of Pronai's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pronai, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

40.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Pronai's securities and operated as a fraud or deceit on Class Period purchasers of Pronai securities by materially misleading the investing public. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Pronai's securities fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Pronai securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICATION OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

41.    At all relevant times, the market for Pronai's securities was an efficient market for the following reasons, among others:

a)    Pronai securities met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b)    Pronai filed periodic public reports with the SEC and the NASDAQ; and

c)      Pronai regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

42.      As a result of the foregoing, the market for Pronai's securities promptly digested current information regarding Pronai from all publicly available sources and reflected such information in the prices of the securities. Under these circumstances, all purchasers of Pronai securities during the Class Period suffered similar injury through their purchase of Pronai securities at artificially inflated prices and a presumption of reliance applies.

**<u>NO SAFE HARBOR</u>**

43.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Pronai who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Pronai securities during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable, since Pronai has millions of shares of stock outstanding and because the Company's shares were actively traded on the NASDAQ.  As of August 9, 2016, there were 30,325,124 shares of common stock outstanding.  While the exact number of Class members in unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class and that they are geographically dispersed.

46.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

(a)     whether Defendants violated the Exchange Act;

(b)      whether Defendants omitted and/or misrepresented material facts in their publicly disseminated reports, press releases, and statements during the Class Period;

(c)     whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether Defendants participated and pursued the fraudulent scheme or course of business complained of herein;

(e)       whether Defendants acted willfully, with knowledge or recklessly in omitting and/or misrepresenting material facts;

(f)       whether the price of Pronai securities was artificially inflated during the Class Period as a result of the material nondisclosures and/or misrepresentations complained of herein; and

(g)       whether the members of the Class have sustained damages as a result of the decline in value of Pronai's stock when the truth was revealed, and if so, what is the appropriate measure of damages.

47.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

48.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

49.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### CLAIMS FOR RELIEF

#### COUNT I
#### Violation of Section 10(b) of
#### the Exchange Act and SEC Rule 10b-5
#### (Against All Defendants)

50.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

51.    This Count is asserted by Plaintiff on behalf of themselves and the Class against all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. C 240.10b-5, promulgated thereunder.

52.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Pronai's common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Pronai's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

53.     Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers and acquirers of the Company's common stock in an effort to maintain artificially high market prices for Pronai's common stock in violation of Section 10(b) of the Exchange Act and Rule 10-5.

54.     As a result of their making and/or their substantial participation in the creation of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-K (17 C.F.R. § 229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete, and accurate information.  Defendants' material misrepresentations and omissions as set forth herein violated that duty.

55.     Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the Class.  Defendants knowingly or recklessly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

56.     As a result of Defendants' fraudulent activity, the market price of Pronai was artificially inflated during the Class Period.

57.     In ignorance of the true financial condition of Pronai, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of Pronai containing the misleading information, purchased or otherwise acquired Pronai's common stock at artificially inflated prices during the Class Period.

58.     Plaintiff and the Class's losses were proximately caused by Defendants' active and primary participation in Pronai's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors adverse material information regarding the Company. Plaintiff and other members of the Class purchased Pronai's stock in reliance on the integrity of the market price of that common stock, and Defendants manipulated the price of Pronai's common stock through their misconduct as described herein. Plaintiff's and the Class's losses were a direct and foreseeable consequence of Defendants' concealment of the true financial condition of Pronai.

59.     Throughout the Class Period, Defendants were aware of material non-public information concerning Pronai fraudulent conduct (including the false and misleading statements described herein). Throughout the Class Period, Defendants willfully and knowingly concealed this adverse information, and Plaintiff's and the Class's losses were the foreseeable consequence of Defendants' concealment of this information.

60.     As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of Pronai common stock during the Class Period.

## COUNT II
### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

61.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

62.     During the Class Period, the Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public. Plaintiff and other members of the Class had no access to such information, which was, and remains solely under the control of the Defendants.

63.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware (or recklessly disregarded) that materially false and misleading statements were being issued by the Company and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.   Throughout the Class Period, the Individual Defendants were able to, and did, control the contents of the Company's SEC filings, reports, press releases, and other public statements.  The Individual Defendants were provided with

21

copies of, reviewed and approved, and/or signed such filings, reports, releases and other statements prior to or shortly after their issuance and had the ability or opportunity to prevent their issuance or to cause them to be corrected.

64.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Pronai's business, the information contained in its filings with the SEC, and its public statements. Moreover, the Individual Defendants made or directed the making of affirmative statements to securities analysts and the investing public at large, and participated in meetings and discussions concerning such statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, the Individual Defendants are responsible for the accuracy of Pronai's corporate releases detailed herein and is therefore responsible and liable for the misrepresentations contained herein.

65.     The Individual Defendants acted as controlling persons of Pronai within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Pronai to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Pronai and all of its employees. As alleged above, Pronai is a primary violator of Section 10(b) of the Exchange Act and SEC Rule 10b-5.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

66.     As a direct and proximate result of the wrongful conduct of Pronai and the Individual Defendants, Plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

(A)     Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and her counsel as Class counsel;

(B)     Awarding Plaintiff and the members of the Class damages, including interest;

(C)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including and attorneys' fees; and

(D)     Awarding such equitable/injunctive or other relief as the Court may deem just and proper

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 9, 2016                    /s/ *Shannon L. Hopkins*
                                            _____

                                            **LEVI & KORSINSKY LLP**
                                            Shannon L. Hopkins (SH-1887)
                                            Meghan K Daley
                                            733 Summer Street, Suite 304
                                            Stamford, CT 06901
                                            Tel.: (212) 363-7500
                                            Fax: (866) 367-5610
                                            Email:  shopkins@zlk.com
                                            Email:  mdaley@zlk.com

                                            *Counsel for Lead Plaintiffs*

4822-9818-1180, v. 1